UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDGAR M. DUNN                                CIVIL ACTION

VERSUS                                       NO: 04-2354

RODNEY J. STRAIN, SHERIFF OF                 SECTION: "J"(5)
ST. TAMMANY PARISH, LOUISIANA

### ORDER AND REASONS

Before the Court is the **Motion for Summary Judgment** filed by defendant. Rec. Doc. 11. Plaintiff opposes the motion. For the reasons which follow, the Court finds that defendant's motion should be granted.

### BACKGROUND FACTS

Plaintiff Edgar M. Dunn was hired by Sheriff Strain on November 5, 2001, as a forensic scientist in the Crime Lab division of the St. Tammany Parish Sheriff's Office ("STPSO"). At the time of his hire, plaintiff, who was born on November 13, 1945, was one week short of his 56th birthday.

On August 13, 2003, another Crime Lab employee, Corporal Kelly Carrigan, accidentally discharged a loaded weapon in the Lab. Plaintiff Dunn was nearby when the discharge took place, and in the same room with Carrigan when other Crime Lab employees responded to the sound of the discharge. Both Dunn and Carrigan

denied a weapon had been discharged, and further denied having heard the sound that alerted the other employees. Both Dunn and Carrigan denied knowledge of the incident when later questioned by Dunn's immediate supervisor, Lieutenant Eugene Hirstius.

On August 15, 2003, Captain Timothy Lentz, the head of the Crime Lab, questioned plaintiff Dunn again about the incident. After repeated denials, plaintiff finally admitted the discharge had taken place, and he eventually named Carrigan as also being involved. Later that day, Carrigan confirmed this version of events to Lentz. Following a five-day period of paid administrative leave, Dunn's employment was terminated. Carrigan received a five-day suspension without pay.

In the Employee Counseling Form arising from the incident, Dunn was cited for, among other things, making a false statement, which is considered a "Group 3 offense" under STPSO Disciplinary Rules, and thus justifies immediate termination of employment. The form further reflects that Dunn had been disciplined on several occasions prior to the weapon discharge incident. In contrast, an affidavit submitted by Captain Donna Schlesinger, director of the STPSO Human Resources Department, reflects that the weapon discharge was the first disciplinary action against Carrigan. At the time of his termination, Dunn was 57 years of age and Carrigan was 48 years of age.

Plaintiff has filed suit raising four claims: a federal age discrimination (ADEA) claim; a state age discrimination (LADEA) claim; a procedural due process violation claim; and a claim under 42 U.S.C. § 1983.  Plaintiff premises his state and federal age discrimination claims on his argument that Carrigan, a younger man, was spared termination while plaintiff was not, and thus his termination was age-based.  His procedural due process claim is grounded in plaintiff's contention that the STPSO did not provide him with written notice and an opportunity to be heard on the decision to terminate him.  Plaintiff's 1983 claim is based on the argument that Sheriff Strain and the STPSO acted under color of state law to deprive him of federally-protected rights, which he does not specify but presumably refers to the alleged discrimination and due process violations.  The Court discusses each claim in turn.

## DISCUSSION

### ADEA claim

The ADEA makes it "unlawful for an employer...to discharge any individual...because of such individual's age."  29 U.S.C. § 623(a)(1).  However, termination alone does not establish liability; an ADEA plaintiff "faces the burdensome task of proving that the termination of his employment was the result of unlawful age discrimination."  <u>Wamsley v. Champlin Refining &</u>

Chemicals, Inc., 11 F.3d 534, 542 (5th Cir. 1993).  In a case such as this one, where there is no direct evidence of discrimination, courts rely on the burden-shifting analysis set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  West v. Nabors Drilling USA, Inc., 330 F.3d 379, 384 (5th Cir. 2003), citing Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 & n. 3 (5th Cir. 2000).  This requires first that the plaintiff establish a prima facie case of age discrimination.  Id.

A prima facie case requires that the plaintiff (1) was discharged; (2) was qualified for the position; (3) was within the protected class; and (4) was replaced by someone outside the protected class, someone younger, or otherwise discharged because of his age.  West, 330 F.3d at 384 (5th Cir. 2003), citing Brown v. CSC Logic, Inc., 82 F.3d 651, 654 (5th Cir. 1996).

Once a prima facie case is established, the burden of production shifts to the employer to provide, through admissible evidence, a legitimate, nondiscriminatory explanation for the termination.  West, 330 F.3d at 384 (citations omitted).  If the employer can articulate such a reason, the initial presumption in plaintiff's favor is overcome, and the burden of persuasion shifts to the plaintiff to show that the proffered reason was a mere pretext for illegal discrimination.  Id. at 385; see also,

4

<u>Johnson v. State of Louisiana</u>, 351 F.3d 616, 621 (5th Cir. 2003). To demonstrate that the proffered reason is pretextual, the plaintiff must "show that a reasonable factfinder could conclude that [the employer's] reason [is] unworthy of credence.... [T]here must be some proof that [an improper factor] motivated the employer's action, otherwise the law has been converted from one preventing discrimination...to one ensuring dismissals only for just cause." <u>Moore v. Eli Lilly & Co.</u>, 990 F.2d 812, 815-816 (5th Cir. 1993)(citations and quotations omitted).

In this case, defendant has assumed that plaintiff can state a prima facie case for purposes of this motion. Moreover, defendant has proffered a legitimate, non-discriminatory reason for Dunn's termination – that he was terminated because he lied during an internal investigation (a dischargeable offense under STPSO Disciplinary Rules), and also because he had committed several other violations of disciplinary regulations near in time to the weapon discharge incident. Because these are legitimate, non-discriminatory reasons for Dunn's termination, the burden of persuasion must shift to plaintiff Dunn to demonstrate that the reasons proffered by the defendant for discharging him are unworthy of credence, and prove that an unlawful motivation was the basis for his firing.

This plaintiff cannot do. Plaintiff does not contest that

lying in the course of the weapon discharge investigation subjected him to immediate termination under STPSO Disciplinary Rules.  Rather, plaintiff claims that because a 48-year old under nearly identical circumstances received more lenient treatment for this infraction than he – a 57-year old – did, he was subject to unlawful, age-based discrimination.  However, the record in this matter demonstrates that Carrigan's circumstances were not nearly identical.  They differed in the significant respect that Carrigan had no prior disciplinary history, and plaintiff was the subject of several disciplinary actions and had come to be perceived by his superiors as a problem employee.  See, e.g., Rec. Doc. 11, Exh. A, Aff. of Capt. Donna Schlesinger, ¶¶ 6 & 7; Exh. B, Aff. of Capt. Timothy Lentz, ¶¶ 3, 6, & 7; Exh. F, STPSO Employee Counseling Form dated July 18, 2003; Exh. G., "Confidential Memos" from Lieutenant Hirstius to Major Oswald, dated June 3-5, 2003.  Plaintiff has come forward with no evidence to controvert the record evidence cited above.  Thus, the situations of Carrigan and the plaintiff were not nearly identical: at the time of the weapon discharge incident (and for reasons Dunn may well consider unfair), Dunn was held in considerably less esteem by his employers than Carrigan, for reasons which appear to have no relation to his age.

What plaintiff does controvert is the validity of his

6

previous disciplinary actions, arguing that "defendant cannot prove that Dunn had prior incidents of misconduct," as well as the basis of certain supervisors' low opinion of him, thereby suggesting that there is no basis for any distinction between himself and Carrigan with respect to what discipline should have been meted out for the weapon discharge offense.  Opp. at 10. However, whether defendant can prove the prior incidents of misconduct misses the point.  The law does not require that Dunn have a lengthy disciplinary history for the STPSO to fire him; it only requires that it did not do so based on his age.  If Dunn was perceived as a discipline problem, *rightly or wrongly*, and that was the motivation for discharging him, while it may not have been nice or fair, it was not illegal.  Louisiana is an "at will" employment state, and thus an employee may be terminated for any reason (or no reason) so long as he is not terminated for an illegal reason.  In this case, plaintiff does not contest that he committed a violation subjecting him to immediate discharge, namely, lying in the course of an internal investigation; and the record reflects that his supervisors considered him to have been involved in a series of disciplinary incidents which led them to consider him less favorably than Carrigan.  These were the reasons proffered for his termination, and they are consistent with the uncontroverted record.

7

Further, the conclusion that Dunn's termination was not age-based is bolstered by the fact that at the time of his hire, he was a week short of 56 years old, and at his termination, he was 57-years old and had been working for the STPSO for less than two years.  It strains credulity to believe that STPSO harbors an animus towards indivduals 57 years and older that it does not hold towards 56-year olds, or, as defense has suggested, that STPSO would hire Dunn *in spite of* his age in 2001, and fire him *because of* his age in 2003.  "From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once the are on the job."  Brown, 82 F.3d at 658 (internal quotations omitted).  In this vein, the Fifth Circuit noted in a case involving an individual hired at 52 years of age and fired at 54 years of age that "the argument that the same Board that would hire a 52-year-old would fire him two years later because of his age is a strained one."  White v. Mississippi State Oil & Gas Bd., 650 F.2d 540, 544 (5th Cir. 1981).

Accordingly, the Court finds that plaintiff cannot satisfy his burden of production to show that defendant's proffered reason for discharging him was a pretext for a firing motivated by his age.  Defendant is therefore entitled to summary judgment

8

on this issue.

### *LADEA claim*

Louisiana's statute prohibiting age discrimination mirrors the federal age discrimination statute. Compare, La. Rev. Stat. 23:312 with 29 U.S.C. § 623. As a result, Louisiana courts "look[] to federal law to decide employment discrimination cases." Johnson, 351 F.3d at 619, citing Plummer v. Marriott Corp., 654 So. 2d 843, 848 (La. Ap. 4th Cir. 1995). The state law provision at issue in this case is nearly identical to its federal counterpart. See, La. Rev. Stat. 23:312(a)(1) and 29 U.S.C. § 623(a)(1). Accordingly, the rationale discussed above mandating the dismissal of plaintiff's federal ADEA claims applies equally to his LADEA claims, and defendant is entitled to summary judgment on the state law claims as well.

### *Substantive due process claim*

Plaintiff has also alleged that the STPSO illegally deprived him of procedural due process in failing to furnish him with written notice and an opportunity to be heard on the decision to terminate his employment. However, "[p]ublic employees are entitled to pretermination hearings under the due process clause of the Fourteenth Amendment only if they have a cognizable property or liberty interest in continued employment." Irby v. Sullivan, 737 F.2d 1418, 1421 (5th Cir. 1984), citing Board of

Regents v. Roth, 408 U.S. 564, 569-70 (1972)(other citations omitted). To determine if an individual has a property interest in his employment, courts look to Louisiana state and local law. Cabrol v. Town of Youngsville, 106 F.3d 101, 106 (5th Cir. 1997). "Absent a contractual agreement for employment for a specified term or a legislative or regulatory restraint on a public entity's termination authority, Louisiana law does not establish a right to continued employment." Id. In this case, plaintiff has pointed to no contractual agreement or legislation vesting him with a property interest in his continued employment, therefore, he has no procedural due process rights in connection with his termination. Defendant is therefore entitled to summary judgment on this claim.

### *42 U.S.C. § 1983 claim*

Finally, plaintiff has alleged under 42 U.S.C. § 1983 that defendant and the STPSO acted under color of state law to deprive him of federally-protected rights. While it is not clear from his complaint what specific rights he believes were abridged, presumably this claim is derivative of his age discrimination and due process claims. Those claims having been found to be lacking in merit, plaintiff's 1983 claim derived from them must also fail. Accordingly,

**IT IS ORDERED** that defendant's **Motion for Summary Judgment**

10

**(Rec. Doc. 11)** should be and is hereby **GRANTED**, and plaintiff's claims are hereby **DISMISSED** with prejudice.

Lafayette, Louisiana, this 18th day of October, 2005.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE